UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ALEXANDER LADINO VARGAS,<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.<br>Respondents. | No. 2:26-cv-0005-DJC-EFB<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a person detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241. For the reasons set forth below, the undersigned recommends that the petition be granted in part and respondents be ordered to provide petitioner with a bond hearing.

**BACKGROUND**

In his petition for writ of habeas corpus, petitioner alleges he has been in immigration detention since February 20, 2025. ECF No. 1 at 5. Respondents' initial response provides further factual background, which petitioner does not dispute.[1] ECF No. 7. Petitioner is a native

[1] Petitioner had pro se status when he filed his petition initiating this action. Respondents filed an initial opposition. ECF No. 7. After the court appointed counsel for petitioner, the parties agreed to a modified scheduling order, which allowed petitioner to file a reply and respondents to file their reply. ECF Nos. 14, 15, 18. Petitioner subsequently filed a final pleading styled as a "response." ECF No. 19. These subsequent pleadings supplement the factual information in petitioner's initial pro se petition.

of Colombia who entered the United States on a B-2 visa[2] on February 16, 2024. ECF No. 7-1 at ¶ 5 (Declaration of deportation officer Patrick Cruz). He was notified that his visa was revoked on March 19, 2024 by the Department of State because of criminal history in Columbia. *Id*. at ¶¶ 6-7. Petitioner disputes the Columbian criminal history. He claims that he was wrongly accused of criminal conduct by a politically-connected opposing party in a land dispute and that he was arrested and imprisoned but not convicted because the prosecutor ordered his release. ECF No. 1 at 5-6; ECF No. 15 at 2. He was thereafter threatened and was reportedly targeted for assassination, causing him to flee to the United States. ECF No. 15 at 2. He submits evidence supporting his contentions, including a letter from his Columbian defense attorney and Columbian judiciary records. ECF No. 15-1; ECF No. 15-2. He alleges he fears for his life if returned to Columbia. ECF No. 15 at 3. Respondents submit opposing evidence of news reports about petitioner's imprisonment on accusations of being a "land grabber" for a Columbian gang. ECF No. 7-3 at 5-11.

Petitioner was taken into immigration custody eleven months after his B-2 visa was revoked. ECF No. 1 at 44, 47, 49, 55-57; ECF No. 7-2 at 2-3. He was notified that the statutory basis for his detention is § 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227 (a)(1)(B).[3] ECF No. 1 at 49; ECF No. 7-2 at 2. He was apparently identified for detention on the basis of an Interpol notice that was in turn based on accusations made against him in Columbia.[4] ECF No. 7-1 at ¶ 8; ECF No. 1 at 25-27, 44; see also ECF No. 15-1 at 3 (letter from petitioner's Columbian defense attorney claiming that the Interpol notice was "circulated in an irregular fashion" and that charges against petitioner were dismissed).

////

[2] B-2 visas are issued to persons entering the United States for purposes of personal pleasure and limited business activities. 22 C.F.R. § 41.31; *United States v. Singh*, 979 F.3d 697, 723 (9th Cir. 2020).

[3] Section 237(a)(1)(B) provides that the Attorney General may deport any person whose nonimmigrant visa has been revoked.

[4] The Interpol notice apparently informs that Columbia has identified petitioner as having committed or been accused of "conspiracy to commit murder." ECF No. 1 at 26.

He received a bond hearing on April 21, 2025, at which an immigration judge (IJ) denied bond based on a finding that petitioner was a danger and a flight risk. ECF No. 7-1 at ¶ 10; ECF No. 15 at 3-4. He complains that the IJ made no specific findings but instead literally checked a box on a form indicating the reason for denial. ECF No. 15 at 4; *see* ECF No. 7-4 at 2-3.

Hearings on petitioner's applications for asylum and withholding of removal were re-set multiple times beginning on March 6, 2025, sometimes at petitioner's request and in other instances by the immigration court. ECF No. 7-1 at ¶¶ 9-13; ECF No. 1 at 5; ECF No. 15 at 3. Petitioner's final request for a continuance to allow him to obtain evidence from a hearing in Columbia was apparently denied on January 28, 2026, and his applications were denied the same day. ECF No. 7-5 at 3 (request to continue hearing date); ECF No. 18-1 (denial of withholding applications). Petitioner has appealed the denial. ECF No. 18-2.

Petitioner's son was born in the United States 20 days before he was detained. ECF No. 15 at 3. His wife was hospitalized after the birth and released three days before he was detained. ECF No. 15 at 3. He maintains his detention has been a hardship for his family. ECF No. 15 at 4. He asserts that his detention has adversely affected his health, that he has been chronically ill since an air conditioning duct fell on him at his previous detention facility, that he is required to pay $0.85 per pill for aspirin, and that he is anxious and depressed because of his detention. ECF No. 15 at 18-19.

**LEGAL STANDARD**

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

**DISCUSSION**

Petitioner asserts that his ongoing detention violates his rights under the Fifth Amendment Due Process Clause. ECF No. 1 at 16-18. His pro se petition asks the court to issue a writ of habeas corpus ordering a bond hearing or in the alternative his immediate release. ECF No. 1 at

18. He also (somewhat confusingly) requests a temporary restraining order "preventing Respondents from further immigration hearings and/or removal from the United States." ECF No. 1 at 18. His reply, filed by his attorney, asks for his immediate release, an injunction against his re-detention without a pre-deprivation bond hearing, and a return of all property confiscated from him. ECF No. 15 at 24-25.

**A. Merits Of The Petition**

The court construes liberally the allegations of petitioner's pro se complaint. *See Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Zichko v. Idaho,* 247 F.3d 1015, 1020 (9th Cir. 2001); *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987).

**B. Due Process Requires That Petitioner Receive Another Bond Hearing**

Respondents assert that petitioner is detained pursuant to 8 U.S.C. § 1226(a), which petitioner does not dispute. ECF No. 7 at 2. Persons detained pursuant to § 1226(a) are entitled to a bond hearing. Petitioner has been denied bond, but he argues that the IJ's April 21, 2025 decision contained "no real findings regarding the court's reasoning for its decision." ECF No. 1 at ECF No. 15 at 4. Respondents claim this description is "incorrect," and they maintain that petitioner "did have a hearing on flight and danger." ECF No. 7 at 2. But respondents fail to support their contention with evidence that the IJ made individualized factual findings. Instead they submit only a check-marked form that is consistent with petitioner's description. ECF No. 7-1 at ¶ 10; ECF No. 7-4 at 2-3.

Another court in this district has observed that Ninth Circuit precedent "forecloses an *inherent* due process right to a second or successive bond hearing by virtue of petitioner's continued, prolonged detention" but does not foreclose "individualized analysis as to whether such a successive bond hearing is necessary to satisfy due process." *Alvarez v Becerra*, 1:26-cv-0008-DC-SCR, 2026 WL 295552, at *4 (E.D. Cal. Feb. 4, 2026) (applying individualized analysis to a person whose detention had continued nearly an additional 18 months after a first bond hearing) (emphasis in original).

In considering whether another bond hearing should be provided to petitioner in such circumstances, the Ninth Circuit "has assumed, without deciding, that the three-part test

articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), applies. *Id*. At this step, courts weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, petitioner has shown that he has a substantial interest in his freedom from detention, relative to the first factor. Since petitioner's entry to the United States in 2024, he necessarily has developed "enduring attachments of normal life" legally indistinguishable from those experienced by a criminal parolee. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Selis Tinoco v. Noem, et al.,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025).

Petitioner also has demonstrated that the second *Mathews* factor weighs in his favor. It is unclear whether he received full procedural safeguards in his first bond hearing, or whether the bond denial was merely pro forma. Without an individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's lengthy detention is considerable. Petitioner's continuing detention may only be justified if he currently poses a flight risk or a danger to the community. *See* 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 690. His continuing detention "must be considered in conjunction with [] whether any risks can be mitigated through alternatives to detention." *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1197 (E.D. Cal. 2025) (quoting *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1087 (N.D. Cal. 2024) (cleaned up)). Without an individualized bond determination by a neutral factfinder in order to determine whether his continued detention is legally justified, the risk of erroneous deprivation of petitioner's protected liberty interests is great. *See Selis Tinoco,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6; *Labrador-Prato v. Wofford,* 815 F. Supp. 3d 1113, 1121 (E.D. Cal. 2025); *see also Demore v. Kim*, 538 U.S. 510 (2003); *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5 (E.D. Cal. Dec. 11, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v.*

*Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Correspondingly, the probative value of the additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M.*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

Petitioner also has shown that the third *Mathews* factor weighs in his favor. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also Ma*, 257 F.3d at 1115 (government cannot continue detention indefinitely but noncitizen must comply with conditions of supervision); *Doan*, 311 F.3d at 1162 (government may impose reasonable conditions on release of detainee). The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Selis Tinoco,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6; *Labrador-Prato,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802, at *5; ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government.").

Accordingly, the undersigned finds respondents' interest in continuing to detain petitioner without an individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Petitioner has thereby shown his entitlement to relief on his claim that his detention violates his rights under the due process clause of the Fifth Amendment.[5]

////

////

////

---

[5] Petitioner alternatively argues for his immediate release on the grounds that respondents are unable to provide a neutral adjudicator for a bond hearing, citing alleged firings of immigration judges comprising their independence, statistical evidence of bias, and hiring of judges "aligned with enforcement agenda." ECF No. 15 at 6-14. As another court of this district has observed, such allegations "raise serious concerns, but only of a generalized nature. And generalized contentions of this sort do not establish futility: the futility exception requires a showing that the available administrative remedy is inadequate or unavailing as to a petitioner's own cause." *Gagik T. v. Chestnut*, No. 1:26-cv-2839-MWJS, 2026 WL 1216897, at *3 (May 4, 2026) (citation omitted).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED IN PART as follows:

1) Respondents be ordered to provide petitioner with a bond hearing within ten (10) days at which the Government shall bear the burden of showing that he is not a flight risk or a risk to community safety.

2) If petitioner is not provided a bond hearing within ten (10) days, he be released from Respondents' custody.

3) Petitioner's request for immediate release be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 3, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE